FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2002 AUG 27  A 11: 54

CLERKS OFFICE
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROCKVILLE HARLEY-DAVIDSON,    *
     INC.                    *
         v.              *    Civil No. JFM-02-CV-1576
                        *
HARLEY-DAVIDSON MOTOR CO.,     *
     INC.                    *
                    *****

## MEMORANDUM

Plaintiff Rockville Harley-Davidson, Inc. ("Rockville Harley") has moved to remand this case to the Maryland Department of Transportation, Motor Vehicle Administration ("MVA"). It contends that removal by the defendant, Harley-Davidson Motor Co., Inc. ("Harley-Davidson"), was improper because the action was pending before a state agency that did not function as a state court. For the reasons set forth below, plaintiff's motion will be granted.[1]

I.

This case involves a dispute between Harley-Davidson, the motorcycle manufacturer, and Rockville Harley, an authorized Harley-Davidson dealer, concerning the availability of new Harley-Davidson motorcycles for sale in Maryland. Both Rockville Harley and Harley-Davidson are licensed by the state pursuant to Md. Code Ann., Transp. II § 15-101 et seq., which provides a comprehensive licensing scheme concerning new vehicle sales in Maryland.

---

[1] Plaintiff also has filed a Motion to Strike Defendant's Notice of Filing Additional State Court Papers and Certification of Filing of State Court Papers, contending the filing was untimely. The notice to which plaintiff objects was filed on May 30, 2002, "[w]ithin 30 days" after the May 1, 2002, notice of removal. Local Rule 103.5(a). Because the notice was timely under the local rule, this motion will be denied.

1



On February 25, 2002, Devin L. Battley, the president of Rockville Harley, wrote to Anne S. Ferro, the Motor Vehicle Administrator, complaining that Harley-Davidson had violated two provisions of that statutory scheme as it pertains to vehicle manufacturers. (See Def.'s Opp'n Ex. A at 1.)  Battley first charged that Harley-Davidson violated Md. Code Ann., Transp. II § 15-208[2] by advertising motorcycles for immediate delivery in Maryland and then refusing to deliver motorcycles to Rockville Harley. (See id.)  He provided Ferro with a copy of a January 2002 order he sent to Harley-Davidson, which the manufacturer said it was unable to fill because all 2002 model-year motorcycles already had been allocated to other dealers. (See Notice of Removal, Ltr. from Battley to Ferro, Feb. 25, 2002, Exs. 1, 8.)

Battley also alleged that Harley-Davidson had violated Md. Code Ann. Transp. II § 15-207, prohibiting coercion of dealers. (See Def.'s Opp'n Ex. A at 1-2.)  This allegation related to Harley-Davidson's operation of a vehicle allocation program called "Bar & Shield." Battley charged that Bar & Shield is based on dealer performance, and thus is governed by Md. Code Ann. Transp. II § 15-207(e), which requires that such programs be fair and equitable.[3] (See id. at 2.)  According to Battley, Harley-Davidson inaccurately scored Rockville Harley under the program, and therefore failed to deliver enough motorcycles to it. (See id. at 2.)  He also alleged that Bar & Shield had been improperly "used as leverage" by Harley-Davidson in an attempt to

_____

[2]This provision prohibits manufacturers from "refus[ing] to deliver new motor vehicles . . . to a licensed dealer or distributor, in reasonable quantities and within a reasonable time after receipt of a written order . . . ." Md. Code Ann., Transp. II § 15-208(a).

[3]The provision states: "A performance standard or program for measuring dealership performance that may have a material effect on a dealer and the application of the standard or program by a manufacturer . . . shall be fair, reasonable, equitable, and based on accurate information." Id. § 15-207(e)(2).

2

force Rockville Harley to move to a new facility, in violation of Md. Code Ann., Transp. II § 15-207(d).[4]

According to Battley, both alleged statutory violations affected Maryland consumers and Maryland Harley-Davidson dealers. He stated in his letter to Ferro that Harley-Davidson "uses the allocation system to deny motorcycles to Maryland consumers thru [sic] their existing dealers while advertising the availability of those vehicles. The allocation system is also used to coerce Maryland dealers to improperly comply with the whims of [Harley-Davidson]." (See id.) He urged the MVA to take "immediate action to compel [Harley-Davidson] to comply with Maryland law, and to have [Harley-Davidson] pay [Rockville Harley] damages for the financial losses suffered due to these violations." (See id. at 3.)

On March 29, 2002, the MVA sent Harley-Davidson a copy of the letter at Harley-Davidson's request. (See Def.'s Mem. Ex. C.) The manufacturer states that it received the letter on April 1, 2002. On May 1, 2002, it filed a Notice of Removal, basing jurisdiction on 28 U.S.C. § 1332. The parties are diverse, since Rockville Harley is a citizen of Maryland and Harley-Davidson is a citizen of Wisconsin. (See Notice of Removal ¶¶ 8,9.) Harley-Davidson also contends that the amount-in-controversy requirement is met because Battley stated in his complaint to Ferro that Rockville Harley had lost $250,000 in profits over three model years by

---

[4]This provision prohibits manufacturers from coercing a dealer to "[m]aterially change the dealer's facilities or method of conducting business if the change would impose a substantial financial hardship on the business of the dealer." Id. § 15-207(d)(2).

being shortchanged twenty-three Harley-Davidson motorcycles per model year.  (See id. ¶ 10; Def.'s Opp'n Ex. A at 2.)[5]

## II.

## A.

By its plain language, the removal statute speaks only of the removal of cases from "a State court . . . ."  28 U.S.C. § 1441(a).  Whether removal can extend to proceedings before administrative agencies has generated substantial debate in the federal courts.  Several circuits have applied a functional test, allowing removal in cases in which a state administrative agency functions as a court.  See Floeter v. C.W. Transport, Inc., 597 F.2d 1100, 1102 (7th Cir. 1979); Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd., 454 F.2d 38, 44 (1st Cir. 1972); see also Tool & Die Makers Lodge No. 78 Int'l Ass'n of Machinists, AFL-CIO v. Gen. Elec. Co. X-Ray Dep't, 170 F. Supp. 945, 950 (E.D. Wis. 1959) (deriving the functional approach from two Supreme Court cases, Upshur County v. Rich, 135 U.S. 467 (1890), and Prentis v. Atlantic Coast Line Co., 211 U.S. 210 (1908)).  Other courts have found it impermissible to ever remove an action pending before a state agency "regardless of how court-like the proceedings may be."  Oregon Bureau of Labor & Indus. ex rel. Richardson v. U.S. West Communications, Inc., 288 F.3d 414, 419 (9th Cir. 2002); see also DeLallo v. Teamsters Local Union #776, 1994 WL 423873, at *3 (E.D Pa. 1994) (concluding that the Third Circuit would reject the functional test and would never allow removal from a state administrative agency).

---

[5]I will not address plaintiff's arguments regarding the amount in controversy or the timeliness of the removal because I find that in any event, the case should not have been removed.

The Fourth Circuit has yet to decide whether cases may be removed from state administrative agencies pursuant to 28 U.S.C. § 1441, and if so, under what circumstances. However, because the Fourth Circuit has applied the functional test of Volkswagen in the context of the federal officer removal statute, 28 U.S.C. § 1442, I will apply it here. See Kolibash v. Comm. on Legal Ethics of the West Virginia Bar, 872 F.2d 571, 576 (4th Cir. 1989); see also Ginn v. North Carolina Dep't of Corr., Div. of Prisons, 829 F. Supp. 804, 806-07 (E.D.N.C. 1993) (applying functional test in context of state administrative proceeding). However, as with all cases involving removal under 28 U.S.C. § 1441, the burden of establishing federal jurisdiction remains on the removing party. removal is to be "strictly construe[d]," and remand is necessary "[i]f federal jurisdiction is doubtful . . . ." Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).

B.

The functional test involves two steps. First, the court must evaluate "the functions, powers, and procedures of the state tribunal" in order to consider whether the entity functions as a court. Floeter, 597 F.2d at 1102. Second, the court must consider "the respective state and federal interests in the subject matter and in the provision of a forum." Id.; see also Volkswagen, 454 F.2d at 44 (noting same considerations). The federal court should assume jurisdiction only if the agency functions as a court and federal interests predominate over state interests. See, e.g., Ford Motor Co. v. McCullion, 1989 WL 267215, at *2 (S.D. Ohio 1989) (finding removal from administrative agencies appropriate only in "restrictive instances" where both elements of the test are met).

5

In this case, I conclude that while the MVA employs many of the same procedures as a court, it lacks traditional judicial powers and therefore is not the functional equivalent of a court. Additionally, the state's strong interest in enforcing its vehicle-distribution licensing scheme dwarfs any federal interest in the provision of a forum. For this reason, remand is required.

1.

Before the MVA may take action against a manufacturer for violating the licensing subtitle of the vehicle code, the MVA (or the Office of Administrative Hearings as its delegate) must conduct an administrative hearing. See Md. Code Ann., Transp. II §§ 12-104(e)(1), 15-110(b).[6] This hearing has many of the trappings of a court proceeding. The licensee is given timely written notice of the hearing and any charge made, the opportunity to be heard in person, and the right to present documentary evidence and call witnesses, who may be subpoenaed by the MVA. See id. §§ 12-108(a), 12-202, 12-204(5), 12-204(6). The licensee may be represented by counsel. See id. §§ 12-204(8). Additionally, the hearing must be conducted in accordance with the state's Administrative Procedure Act, see id. § 12-206, which allows the licensee or its counsel to conduct discovery, file pre-hearing motions, cross-examine adverse witnesses, and present summation and argument. See Md. Code Ann., State Gov't §§ 10-213(f)(3), 10-213(f)(4); Md. Regs. Code tit. 28, §§ 28.02.01.10, 28.02.01.16(B)(1). Administrative law judges appointed by the OAH preside over the hearings that the MVA delegates to the OAH. See Md. Regs. Code tit. 11, § 11.11.02.07.

---

[6]The MVA retains the power and authority to render the final decision as to actions under the subtitle governing licensing of vehicle manufacturers even if the Office of Administrative Hearings (OAH) has conducted the hearing. See Md. Code Ann., Transp. II § 12-104(2); see also Notice of Removal ¶ 15 (acknowledging that Motor Vehicle Administrator would issue the final decision after the OAH hearing in this case).

6

Despite the employment of these court-like procedures in licensing actions, however, the

MVA is not the functional equivalent of a court because it does not exercise judicial power.

Unlike a court, the MVA cannot enforce the subpoenas it issues through a contempt power.

Rather, it must petition a state court for an order to compel the appearance of witnesses at its

hearings or the production of documents it has requested. See Md. Code Ann., Transp. II § 12-

108(b); see also Southaven Kawasaki-Yamaha v. Yamaha Motor Corp. U.S.A., 128 F. Supp. 2d

975, 980 (S.D. Miss. 2000) (observing that state motor vehicle commission's lack of contempt

powers indicated it was not functionally a court). Further, the MVA's decisions are appealable

to state circuit court, see Md. Code Ann., Transp. II § 12-209(a)(2), and are not given preclusive

effect until they are ratified by a state court. See Bethesda Ford, Inc. v. Ford Motor Co., 572 F.

Supp. 623, 629 (D. Md. 1983).

Most importantly, however, the MVA's lack of judicial power in the context of this case

is illustrated by the fact that the remedies or relief it can provide are severely limited. Neither

declaratory relief, injunctive relief, or monetary damages are available for violations of Md.

Code Ann., Transp. II §§ 15-207, 15-208.[7] Rather, the MVA's response, should it find a

violation or attempted violation of these provisions, is to take licensing action against Harley-

---

[7]The manufacturer licensing provisions appear to limit monetary relief to two circumstances, neither of which is involved here: dealership termination disputes and cases involving licensing violations under Md. Code Ann., Transp. II § 15-212. See Md. Code Ann., Transp. II § 15-209(f) (requiring monetary damages be paid to dealers whose franchises were wrongfully terminated); id. § 15-212(d) (allowing monetary damages "instead of or in addition to revocation, suspension, or nonrenewal of a license under this section . . . .") (emphasis added). The licensing actions available under § 15-212 involve only three circumstances: material misrepresentations in the transfer of a vehicle to a dealer, failure to comply with a written warranty agreement, or failure to compensate dealers for certain work required of them. See id. § 15-212(b). Thus, when Battley requested in his pro se letter to the MVA that the agency award him damages, he was simply mistaken about its ability to do so for the violations he alleged.

7

Davidson – revoking, suspending, or refusing to renew its license to transfer vehicles in

Maryland. See Md. Code Ann., Transp. II § 15–109.[8]  The statute explicitly acknowledges these

limitations by directing those seeking monetary damages to file suit "in any court of competent

jurisdiction." Id. § 15-213.  The MVA therefore has "manifest limitations" on its adjudicative

powers in this context, Southaven, 128 F. Supp. 2d at 980, which render it more like a

quintessential agency than the functional equivalent of a court.  It is these limitations on the

administrative process that Battley initiated which are properly evaluated as part of the functional

test, not whether Battley should have or could have brought a similar complaint in court.

    In summary, then, while the MVA utilizes many court-like procedures, it does not

function as a court in resolving issues such as those raised in this case.[9]  Rather, like other state

licensing agencies, it merely employs adjudicatory procedures in limited circumstances relating

to its duties as a licensor.  See, e.g., Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.,

_____

[8]The business licensing statute provides that when the MVA determines a license should
be suspended, revoked, or not renewed, the MVA and the licensee may agree to conciliate the
matter.  See id. § 15-110.1(a).  This provision also appears to grant the MVA the power to assess
fines as a penalty for violation of the business licensing laws.  See id. § 15-110.1(b); see also
Md. Regs. Code tit. 11, § 11.12.07.01 (stating that fines can be imposed for "any violation under
Transportation Article, Title 15").

    Fines would appear more likely than license suspension, revocation, or non-renewal to be
the type of relief Battley envisioned when drafted his letter requesting the MVA to "compel
[Harley-Davidson] to comply with Maryland law." (Def.'s Opp'n Ex. A at 3.) See also
Southaven, 128 F. Supp. 2d at 977 n.2 (noting, on similar facts, that a manufacturer's loss of a
license would be detrimental to a dealer's business).

[9]I express no opinion on whether the MVA could serve as the functional equivalent of a
court under other circumstances and when considering violations of other statutory provisions,
such as the dealership termination provision.  That provision permits the MVA to award not just
damages, but also injunctive-like relief to dealers.  See Md. Code Ann., Transp. II §§ 15-
209(e)(2), (f)(1); see also Central GMC, Inc. v. Gen. Motors Corp., 946 F.2d 327, 330 (4th Cir.
1991) (noting that this court had allowed removal from the MVA of a dealership termination
case).

224 F.3d 708, 712-13 (7th Cir. 2000) ("That a specialized state regulatory commission can issue

certain business licenses and then for good statutory causes take back what it has issued, does not

transform [it] into a court for removal purposes . . . ."); Sun Buick, Inc. v. Saab Cars USA, Inc.,

26 F.3d 1259, 1264 (3d Cir. 1994) (finding state motor vehicle board did not "possess[] the

powers of a court" where it was limited to administering and enforcing the state's vehicle laws);

BellSouth Telecommunications, Inc. v. Vartek Telecom, Inc., 185 F. Supp. 2d 1280, 1283 (N.D.

Fla. 2002) (refusing to find a state body with a "regulatory raison d'etre" to be the functional

equivalent of a court even though it "sometimes resolves disputes"); Southaven, 128 F. Supp. 2d

at 980 (holding that motor vehicle agency whose "adjudicatory and enforcement powers are

limited to enforcing the statute under which it was created" was not the functional equivalent of a

court).

2.

An evaluation of the respective state and federal interests in the dispute also supports

remand.  This second component of the functional test has been called the "more critical

inquiry."  McCullion, 1989 WL 267215, at *3; see also Ginn, 829 F. Supp. at 806 (calling the

second part of the test "more important").  The court must balance the "state's interests in using

administrative agencies as a whole, against any federal claim present in the action." McCullion,

1989 WL 267215, at *3.  In addition to the subject matter of the dispute, the court must consider

the federal interest in the provision of a forum.  See Floeter, 597 F.2d at 1102; Volkswagen, 454

F.2d at 44.

The state's interests in this dispute are substantial.[10]  At issue is the interpretation and application of two Maryland statutes that are part of a comprehensive state regulatory scheme intended to protect consumers and foster competition.  See Gen. Motors Corp. v. Bannings Beltway Pontiac, 773 A.2d 584, 590 (Md. Ct. Spec. App. 2001).  That scheme establishes a critical role for the MVA as regulator and licensor of businesses in each chain of the new-vehicle distribution network.  See id.  The MVA adopts rules and regulations relating to these licensing laws and renders the final decision on disputes involving manufacturer licensing.  See Md. Code Ann., Transp. II §§ 12-104(b)(1), 12-104(e).  Removal would eliminate the involvement and control of the MVA in this dispute, inserting the federal court in its place.  Removal also would undermine the state legislature's effort to foster administrative resolution of dealer-manufacturer disputes, as reflected in the 1996 enactment of the provision now codified at Md. Code Ann., Transp. II § 15-214(1).[11]

In contrast to the strong state interest in the dispute, the federal interest is slight.  No issue of federal law is involved, as in Volkswagen and Floeter, the two federal circuit court cases

_____

[10]The strong state interest in this dispute renders this case distinguishable from Subaru of New England v. Bald Hill Realty, Nos. 99-444, 99-466 (D.R.I. January 4, 2000) (Def.'s Opp'n Ex. D), and Corwin Jeep Sales & Serv., Inc. v. Am. Motor Sales Corp., 670 F. Supp. 591 (M.D. Pa. 1986).  The district courts in both Subaru and Corwin likened those disputes to private, two-party conflicts that did not implicate state interests or trigger regulatory concerns.  See Subaru, Def.'s Opp'n Ex. D at 14-15, 29-30; Corwin, 670 F. Supp. at 594-95.

[11]This provision states: "In addition to any other right to request a hearing under this subtitle and notwithstanding any provisions of the franchise agreement to the contrary, a dealer . . . may request a hearing under Title 12, Subtitle 2 of this article to . . . [r]esolve a dispute under any provision of this title between a dealer . . . and a manufacturer . . . ."  Md. Code Ann., Transp. II § 15-214(1).

which helped to establish the functional test.[12]  Further, this case contains none of the same

concerns as were present in Kolibash, which the Fourth Circuit found involved the "paramount"

federal interest in "protecting federal officials in the performance of their federal duties" and the

"critical federal function [of] a United States Attorney's supervision of his own staff."  872 F.2d

at 575-76.  The sole federal interest at stake in this dispute is in providing a forum to diverse

parties.  Such an interest is inadequate in light of the state's substantial interest in administering a

state program and preserving the oversight role of a state agency.  See Wirtz, 224 F.3d at 712-13.

As the district court observed in McCullion, removal "could threaten the proper ambit of

administrative control by creating a mechanism whereby disputes could be removed simply

based on diversity jurisdiction."  1989 WL 267215, at *3; cf. Ginn, 829 F. Supp. at 806 (rejecting

removal of agency proceeding where state had an interest in "avoiding undue federal intervention

in state administrative affairs").

     Because the MVA is not functionally a court for purposes of this dispute, and because

state interests outweigh federal interests, this case must be remanded to the Maryland Motor

Vehicle Administration.[13]

Date: _August 27, 2002_                              _J. Frederick Motz_
                                                     J. Frederick Motz
                                                     United States District Judge

_____

     [12]Both Volkswagen and Floeter involved questions of federal labor law, an area in which
the federal interest is so strong that "as a matter of substantive law, Congress has preempted the
field."  BellSouth, 185 F. Supp. 2d at 1282 n.1.

     [13]Plaintiff has requested attorney's fees and costs be awarded to it pursuant to 28 U.S.C. §
1447(c).  However, because the motion to remand has raised a novel and complex question, and
because there was no evidence of bad faith in the removal, this request will be denied.  See Nat'l
Ass'n of State Farm Agents, Inc. v. State Farm Mut. Auto. Ins. Co., 201 F. Supp. 2d 525, 531
n.12 (D. Md. 2002).